JOHN NININGER, Respondent, *vs.* WILLIAM L. BANNING, Appellant.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

A party having the right and title to a promissory note, may maintain an action for the conversion of the same, though the note was not actually delivered to the Plaintiff at the time of the purchase, and has never been in his possession.

In an action for the conversion of a promissory note, an issue was made upon the amount received by Defendant for the note. The Court found that Defendant had received a certain amount for the note, (which was less than the amount due upon the same), and held the Defendant liable for the sum so received by him. *Held,* that there was no error in the assessment of damages prejudicial to Defendant.

The following are the facts and conclusions of law as found by the Court below :

That on the 23d day of April, A. D. 1857, one William Hollinshead made and delivered to one J. W. Simonton his note of that date, for $1,500, payable in one year from date to the order of said Simonton, with interest until due at the rate of three per cent. per month, and after due at the rate of five per cent. per month, value received, payable at the office of said Hollinshead, in St. Paul, Minnesota.

That as a collateral security for the payment of said note, the said Hollinshead at said date did deliver to the said Simonton a certain other promissory note, dated at St. Paul, February 23, 1857, and made by one James D. Skinner and one Wilbur M. Hayward, for $1,000, payable to their own order, for value received, six months after date, with interest from date at the rate of three per cent. per month, principal and interest when due, if not paid to bear interest at the rate of five per cent. per month, payable at the office of William L. Banning & Co., and endorsed by said Skinner and Hayward, and by Wm. H. Randall and Charles G. Petteys, and which said note had long before the maturity thereof, been delivered so endorsed, to the said Wm. Hollinshead for a valuable consideration.

That on or about the 10th day of September, A. D. 1857, the said William H. Randall duly made and delivered to one Joseph M. Marshall, a certain indenture of mortgage, dated on said day, conveying the premises therein described for the consideration therein mentioned, to said Marshall in trust, to secure the payment of the several promissory notes therein described. That said Marshall duly executed and delivered a declaration of trust bearing even date with said mortgage, declaring that he held said mortgage in trust for the benefit of the persons stated therein to be the owners of the several notes mentioned therein respectively. That said mortgage deed and declaration of trust were duly recorded in the office of the register of deeds in and for the county of Ramsey, within which county the premises therein mentioned were situated on said 10th day of September, 1857.

I further find that on or about said 10th day of September, 1857, and while the said two notes were the sole property of said Simonton as aforesaid, and were wholly unpaid, the said Defendant, acting voluntarily and without the knowledge of the said Simonton, obtained possession of the note secondly above described, by taking the same from the custody of the said William Hollinshead, who at that date chanced to have the actual custody of the same, in the absence and without the knowledge of said Hollinshead, but with the knowledge and assent of said Hollinshead's book-keeper and chief clerk, and procured the amount of the principal and interest due on said note to be incorporated into and made a part of the amount of three new notes, which were drawn by the said Randall to the order of the said Marshall, and dated September 10th, 1857, which said three new notes were endorsed and delivered by said Marshall to said Defendant, and which were inserted into and made a part of the consideration of said mortgage and part of the debt intended to be secured thereby, in the name of said Defendant and at his request; that the amount of said three new notes was made up by taking the principal and interest due on several notes owned and held by said Defendant, of which said Randall was maker or endorser and liable to pay, and the amount of said notes secondly above described, ascertained in like manner. That said

Defendant procured the whole amount of said three new notes, as well that portion ·which in fact belonged to him as that part which was made up of said note secondly above described, to be inserted into and secured by said mortgage as his own property, and procured the title thereto to be set forth in said mortgage as existing in himself; that said Defendant also procured that part of said mortgage which was given to secure the payment of said three new notes to be set forth in said declaration of trust, as his own, and as held for his own use and benefit; that said Defendant by a separate written agreement, made on said September 10th, 1857, agreed to and with the said Randall to hold said notes which made up the amount of said three new notes as aforesaid, including the said collateral note secondly above described, as security for the payment by said Randall of said three new notes, and did actually continue to so hold the same. That in so procuring said collateral note to be inserted in said mortgage as aforesaid, the said Defendant acted in good faith, and under the belief that the same was the sole property of the said Hollinshead, and in ignorance that said Simonton had any claim to or upon said note whatever. I further find that on or about the 7th day of April, 1858, the said Simonton endorsed and delivered for a valuable consideration to the said Plaintiff, the note first above described, and at the same time and for the same consideration, sold, assigned and transferred to said Plaintiff the said collateral note secondly described herein, and all his right, title and interest in and to the same, and the proceeds thereof. That at the date last aforesaid, the said Simonton resided in Pittsburgh, Pennsylvania, at which place said sale was made to Plaintiff, and the business of procuring said two notes of said Hollinshead as aforesaid, had been transacted at St. Paul, Minnesota, by one Chas. L. Emerson, as the agent of said Simonton. That at the time of the sale and transfer of said two notes to said Plaintiff, the said Simonton gave said Plaintiff a copy of said collateral note and an order on said Emerson for the delivering of the original to said Plaintiff. That on the arrival of said Plaintiff in said St. Paul, in said month of April, 1858, he presented said order to said Emerson and demanded possession of the original

note, and then learned for the first time that said collateral note had been secured in said mortgage as aforesaid, and was then in the actual possession of said Defendant, that thereupon said Plaintiff notified said Defendant that said collateral note was his (Plaintiff's) property, by written notice, dated June 25, 1858, and containing a copy of said note. That said Defendant declined to acquiesce in or recognize the claim of said Plaintiff to said note, any further than to agree to hold the proper proportion of the avails of the securities embraced in said mortgage when the same was realized, for the benefit of the party who should prove to ·be the owner of said note. I further find that the said Defendant, on or about May 19th, 1859, sold, assigned and conveyed by an instrument in writing, duly executed and delivered, unto one Roger M. S. Pease, the said three new notes and the said collateral note secondly above described, with the other notes which entered into and formed the amount of said three new notes, and all said Defendant's interest, right and title in and to the said mortgage, upon the terms for the condition following to wit : The principal and interest on the said three new notes were found by computation to amount to the sum of $11,625.68 on said May 19, 1859. The principal and interest on certain redemptions and judgments paid by said Defendant in redeeming some of the property embraced in said mortgage to protect said trust, were in like manner found to amount to the sum of $1,550.57, —in all the sum of $13,176.25, which latter sum was by mutual agreement called and considered to be $13,200. That for said three new notes thus estimated, the said collaterals and mortgage interest, the said redemption claims thus estimated, and the sum of $5,300 in money, the said Pease agreed to and did give to said Defendant twenty bonds known and called Minnesota State Railroad Bonds, of the denomination of $1,000 each ; that upon these terms the said sale and transfer of the said three new notes, collateral notes, redemption and mortgage securities, was completed and consummated on said May 19th, 1859, and said twenty bonds delivered to said Defendant. That in said sale and transfer the said bonds were estimated at ninety-five cents on the dollar, at which rate the Auditor of the State of Minnesota, under the laws

thereof, then was receiving them as a basis for banking. I further find that said Defendant, at the time of said sale and transfer to said Pease, made a contract with one J. Jay Knox, by which said Knox, who owned a large interest in the said mortgage given by Randall to Marshall as aforesaid, was to furnish one half of the $5,300 to be paid in cash to said Pease as aforesaid, and to transfer and assign to said Defendant a portion of his (Knox's) said interest in said mortgage, equal to one-half of the interest said Defendant had in said mortgage, sold to said Pease as aforesaid, and to receive from said Defendant one-half of the said Minnesota State Railroad Bonds. That said Knox did on said May 19th, 1859, furnish one-half of said $5,300, to wit, $2,650, and transfer a portion of his interest in said Randall mortgage to said Defendant, equal to one-half the interest said Defendant had transferred to said Pease as aforesaid, and did receive from said Defendant ten of said State Railroad Bonds in full payment therefor. That said Knox and the said Defendant sold and disposed of the said twenty bonds, at said St. Paul, within two weeks after said May 19th, 1859, at and for the price of 83 cents on the dollar in cash, and did receive therefor the sum of $16,600, of which sum said Defendant received $8,300 in cash. That the value of said twenty Minnesota State Railroad Bonds, in St. Paul aforesaid, on said May 19, 1859, was the sum of $16,300; that the amount of said Knox's claim or interest in the said mortgage on said May 19, 1859, was estimated to be $22,650, and the portion thereof transferred to said Defendant as aforesaid, was fixed at $6,650; and it was expressly agreed between said Knox and said Defendant that the said Defendant should receive in payment of the said $6,650 the proportional amount of such securities or real estate as the said Knox should decide to receive or take in payment of the entire claim of $22,650, in any arrangement or settlement which said Knox might thereafter make with the said Randall.

I further find that the amount of said collateral note secondly above described, at the date of the said sale and transfer to the said Pease, for principal and interest, according to the basis on which the amount of said new notes was arrived

at between said Defendant and said Pease, was the sum of $1,531.65. That the amount of said collateral note, computing interest thereon at three per cent. a month till maturity, and seven per cent. per annum thereafter till May 19th, 1859, the date of said sale to Pease, was the sum of $1,304.18. That deducting from the value of said bonds, to wit, $16,600, the cash paid said Pease by said Defendant, to wit, $5,300, and the amount paid for redemption as aforesaid, to wit, $1,550.67, there remains the amount of $9,749.43, which I find to be the amount of the value of said bonds received by said Defendant on account of the sale and transfer to said Pease of the said three new notes and collateral notes and the said mortgage security. That the proper proportion of this amount of $9,749.43 received by said Defendant on account of the said note secondly above described, as the same was computed and entered into the amount of said three new notes, was the sum of $1,284.45. That said Plaintiff has demanded of said Defendant to pay over to him his proper share of the amount received as aforesaid, which was refused. That no part of said note for $1,500 first above described, has been paid, and that said Plaintiff is still the owner and holder of the same.

As conclusions of law, I find that said Defendant, by reason of the foregoing facts, became liable to pay to the owner of said collateral note the proportionate amount of the sum received by him on account of said sale and transfer to the said Pease. That said Defendant is not entitled to substitute the interest in said mortgage, received as aforesaid, from said Knox, *pro tanto*, in place of the original security or interest in said mortgage, held by Defendant as aforesaid. That said Defendant is not liable to the owner of said collateral note, either for its actual value or the amount legally due upon the same, but for the amount actually received from the said Pease as aforesaid. That said Plaintiff is the owner of said collateral note, and is entitled to a judgment against said Defendant for the amount actually received by said Defendant on account of said note as aforesaid, to wit, the said sum of $1,284.45, with interest thereon from the said 19th day of May, 1859.

Wherefore it is adjudged that said Plaintiff do have and recover of said Defendant the sum of fourteen hundred sixty-six dollars and forty-one cents, ($1,466.41), for which amount let judgment be entered.

The Defendant moved for a new trial in the District Court. The motion was denied and Defendant appealed.

Points and Authorities for Appellant.

I.—The Plaintiff did not prove title to the note in controversy.

There was no evidence identifying the note alleged to have been transferred by Simonton to Plaintiff with the note found to be in Defendant's hands and which the Plaintiff claimed.

The alleged transfer from Simonton to Plaintiff did not pass any title, there having been no endorsement or delivering of said note to Plaintiff.

The title of the note had changed and was not in Plaintiff at time of transfer.

The title at the time Defendant obtained the note was *prima facie* in Hollinshead, and there was nothing shown impeaching his title. 2 *Greenl. on Ev.*, sec. 163; *Edwards on Bills*, 285; *Sec.* 3, *chap.* 29, *Comp. Stats.*, 375; *Comp. Stats.*, 686.

II.—The Plaintiff claims a conversion of the note by Defendant. Such conversion, if any, transpired before the alleged transfer to him, and there was no transfer of the claim of damages for conversion to Plaintiff, nor were such damages assignable. *Nininger vs. Borup & Oakes*, 5 *Minn.*, *and authorities therein cited.*

III.—There was no demand on Defendant for the note.

IV.—The Plaintiff could not have more than a joint interest with Kunkel in the note, and the suit cannot be maintained for an entire interest in the note.

V.—The note was held in trust for Hollinshead, together with the securities, and the Plaintiff could not call Defendant to account, or claim anything but the note.

VI.—The Plaintiff could not have recovered justly more than the value of the note itself. *Sedgwick on Damages, Ed.* 1858, *p.* 514, (488.)

VII.—The Court erred in assessing the damages proportionate to the value of all the bonds received from the Pease purchase. But a portion of these bonds really remained in the Defendant's hands. Said assessment of damages was also erroneous in other respects, and was far greater than the proportionate proceeds of the securities purchased by Pease.

VIII.—The Court erred in overruling the Defendant's offer to show that certain securities transferred to Pease were distinct from the mortgage, and to show their proportionate value. *Case* 39, 41.

IX.—The Court erred in overruling the Defendant's offer to prove the cash proceeds of the Pease purchase. *Case*.44; *Sedgwick on Damages, p.* 498 (472.)

X.—The Court erred in overruling the Defendant's offer to prove. that said note was worthless and the parties thereto insolvent. *Case* 45.

XI.—The Court erred in overruling Defendant's offer to prove the value of the interest Banning received from Knox in lieu of part of the bonds. *Case* 54.

XII.—The Court erred in allowing the witness Knox to be interrogated on cross examination, by the Plaintiff, as to the proceeds of the bonds received in the Pease purchase. *Case* 55, 56. Also as to what the Auditor received such bonds at for banking purposes. *Case* 57.

HORN & GALUSHA, Counsel for Appellant.

J. W. SIMONTON, Counsel for Respondent.

*By the Court*—ATWATER, J.—The first objection raised by Appellant to the order made by the Court below refusing a new trial, is that there was no evidence identifying the note alleged to have been transferred by Simonton to Plaintiff, with the note found to be in Defendant's hands, and which Plaintiff claimed. And that the alleged transfer from Simonton to Plaintiff, did not pass any title, there having been no endorsement or delivery of said note to Plaintiff.

By reference to the pleadings, it will be seen that the note for the conversion of which this action is brought, is particularly set forth and described in the complaint. It was re-

ceived by Simonton from Hollinshead, as collateral security for another note given by Hollinshead, and was sold and assigned by Simonton to Plaintiff. The answer denies the ownership of Simonton, and alleges that "Defendant came into possession of said note secondly described in said complaint on or about the 10th day of September, 1857, and denies that at the time aforesaid when this Defendant obtained said note that said Simonton owned or held said note, or had any interest therein, and says that at the time last aforesaid the same was owned and held by William Hollinshead," &c. This allegation disposes of the objection in regard to the identification of the note in Defendant's hands, as it is an express admission by Defendant that he holds the note in suit, justifying his possession under authority from Hollinshead, in whom he alleged the title to be.

In regard to the title of the Plaintiff, the complaint alleges that Simonton "endorsed and delivered for a valuable consideration to the Plaintiff herein, the note first mentioned and described, (the principal note) and at the same time sold, assigned and transferred to said Plaintiff the collateral note, being the note second described and set forth in this complaint, and all his right, title and interest in the same, and gave to Plaintiff a copy thereof, with an order on his agent, in whose hands said Simonton believed said note still to be, for the original." The complaint then alleges that by reason of the acts of Defendant, the note never came into possession of the Plaintiff, and that the Defendant has transferred the note to one Pease.

The Court below has found that Simonton was the owner of the note in question, at the time of the transfer to Plaintiff, and that, for a valuable consideration, he sold the said note and all his right, title and interest in the same to Nininger. The evidence on this point is amply sufficient to justify the finding, and was admitted without objection, so far as the case shows. We do not think it true as matter of law, that the interest or title of a party in a promissory note can only be transferred by endorsement or actual delivery of the note. The authorities cited by Appellants, refer to the title to be shown by Plaintiff in actions brought upon the note. This

action is not of that kind, bnt one for the conversion of the note. The note itself could not be delivered, for it was in Defendant's hands. The right and title of Simonton to the note was not divested by the unauthorized seizure thereof by Defendant, and as he, (Simonton) by virtue of his interest in the note, might have maintained this action against Defendant, so when he transferred to Plaintiff the ownership of the note, might the latter maintain the action by virtue of such ownership. The case of *Borup et al. vs. Nininger*, 5 *Minn.*, 523, is not analagous to this, as that was an action against Defendants for negligence, in allowing the endorser to be discharged from his liability. It was there held, that the assignees of the note and mortgage, (Mrs. Kemp and Nininger,) would have been obliged to show something more than the mere ownership of these instruments, supposing the claim to be assignable. Here the owner of the note has *prima facie* a right of action, against any party who has converted the same.

In regard to the objection that the Plaintiff could not have more than a joint interest with Kunkel in the note, that was properly a matter to be determined by the Court below upon the evidence, and with the finding upon that point, this Court see no ground of error.

It is further objected by Appellant that the Court erred in the assessment of damages. It appears from the case that Defendant sold this note (with other securities,) to one Pease, and received therefor, twenty bonds, known as Minnesota State Railroad Bonds, of the denomination of $1000 each. That Defendant disposed of said bonds at eighty-three cents on the dollar, and that the proper proportion of the amount received for the bonds by Defendant, on account of the note in suit, as the same was computed and entered into the amount of the other securities, was the sum of $1,284.45, which amount the Court held the Plaintiff entitled to recover.

Mr. Sedgwick lays down the rule, that where the property sued for in trover is a chose in action, as a bill, note, bond or other security for the payment of money, it seems that the measure of damages is *prima facie* the amount due on the security, the Defendant being at liberty to reduce that valua-

tion by evidence showing payment, the insolvency of the maker, or any fact tending to invalidate the security. The complaint alleges that the Defendant received for this note $2,156, and demands judgment for that sum. The answer denies that Defendant has received anything on the note. This issue was not on the value of the note, or the sum due upon the face thereof, but as to what amount the Defendant had received upon the same. Whatever rule the Court may have adopted in assessing the damages, therefore, we do not see that the Defendant has been prejudiced, since the amount of the judgment is less than the face of the note with interest, and is the amount which the Court finds the Defendant has actually received therefor. In these circumstances, his liability cannot be less than the sum he has received for the note. Nor can it be material that a part of the bonds received by Defendants were undisposed of. If the Defendant received the bonds for the note, and at the time they were worth eighty-three cents, the Defendant cannot claim to escape liability on the ground that the bonds have depreciated on his hands. Under the issue raised by the pleadings, he should be held for the amount received by him for the note, that is, the value of the property at the time it was received.

Nor could the Defendant show, by way of defence, that he received from Knox a less amount for part of the bonds than they were worth, and the Court properly excluded the evidence offered by Defendant to prove this fact.

It appears from the pleadings and case, that a part of the consideration for the bonds received by Defendant, were certain judgments and redemption titles, transferred with the other securities by Defendant to Pease. Upon the trial of the case the Defendant offered to prove that his interest in these was distinct from his interest in the Randall mortgage, and held and managed by Mr. Marshall as a separate and distinct trust from that of the mortgage, and offered to show the proportionate value of his interest in the said judgments and redemption titles, as compared with the value of his interest in the mortgage. The Court refused to permit the Defendant to prove these facts.

Whether these facts, if proved, would constitute any de-

fence, or partial defence to the action, it is not necessary to inquire, as there is no allegation in the answer, authorizing the admission of such evidence. The answer alleges that "the said Pease agreed to purchase of this Defendant all of this Defendant's interest in said mortgage, and in divers redemption titles of portions of the property in said mortgage described, and held by said Marshall in trust, to wit, upon the following terms :

"That this Defendant should pay to the said Pease five thousand dollars cash, and assign to him the said three notes secured in said mortgage and his interest in said mortgage and redemption titles, and that in consideration thereof said Pease should deliver to this Defendant twenty bonds," &c.

It will here be seen that no distinction is made in these securities, nor in the trust by which they are held, nor in the assignment of the same, but the whole is treated as one act and transaction. The offer made by Defendant could not be received under these allegations, and he made no request to amend, and the evidence was properly rejected.

The Appellant also objects, that the Court erred in allowing the witness Knox to be interrogated on cross-examination by the Plaintiff as to the proceeds of the bonds received on the Pease purchase, and as to what the Auditor received such bonds at for banking purposes. We think the evidence was proper on cross-examination. The witness in his examination in chief had been questioned by Defendant as to the value of these bonds, and had stated that it was impossible for him to say what the cash value was,—that he should suppose it was somewhere from 30 to 60 cents. It was certainly competent under this evidence on the part of the Defendant, for the Plaintiff to show if he could that the witness himself had disposed of these bonds at a higher figure than that which he named as the cash price, and also to show that the Defendant had done the same, and it was also responsive to the issue, to show what the Defendant had actually received for his bonds. The price at which the Auditor was receiving these bonds for banking purposes, might not be very material in determining their value, but we think it was competent evidence in view of the direct examination, as a circumstance

which might be properly considered by the Court upon the question of value.    Whether, however, the evidence was proper or not, as to what the auditor received these bonds at, there would be no ground for a new trial in case the Court erred, since it does not appear that the Defendant has been prejudiced by the testimony.    The Court has not found the value of the bonds at the price at which they were received by the auditor, but at the price which the evidence shows the Defendant actually received for them, which was less than what the auditor was receiving them at for banking purposes.

The order denying a new trial must be affirmed.